IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHANE BLANKENSHIP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-CV-00306-DGK |
| | ) |
| E. WILLIAMS, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING PARTIAL MOTION TO DISMISS

This lawsuit arises from Plaintiff Shane Blankenship's allegation that two Kansas City, Missouri, Police Department officers wrongfully arrested him and used excessive force in doing so. Plaintiff is suing the police officers, the Kansas City Board of Police Commissioners, and the current individual members of the Kansas City Board of Police Commissioners in both their individual and official capacities. He brings claims under both state and federal law.

Now before the Court is Defendants' Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) which seeks to dismiss some, but not all, of Plaintiff's claims. ECF No. 11. For the following reasons, the motion is GRANTED. While this dismissal is without prejudice, the Court strongly encourages Plaintiff's counsel to review the substantive law and relevant pleading standards before filing an amended complaint. Further, because Plaintiff's brief cites caselaw that Plaintiff's counsel knew, or should have known, is no longer valid or has been overruled, the Court will issue a separate order directing them to show cause why they should not be sanctioned.

## Standard of Review

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) (cleaned up). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## Background

Accepting the Complaint's factual allegations as true, viewing these allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the Court finds the facts to be as follows for purposes of resolving the pending motion.

On April 30, 2021, Plaintiff was riding his motorcycle and stopped at the Town Topic restaurant located at 2021 Broadway Boulevard in Kansas City, Missouri, to get something to eat. At the same time, Defendant Kansas City, Missouri, Police Department ("KCPD") motorcycle Officers E. Williams and A. Smith were conducting an area canvas looking for motorcycles that had been performing stunts nearby and had eluded the officers. The officers saw Plaintiff's

motorcycle parked in an alley behind the restaurant. Plaintiff's motorcycle appeared to the officers to be one of the motorcycles that had eluded them.

Upon arriving at the restaurant, the officers saw that several of the stunt bike riders had loaded their bikes on trailers in surrounding parking lots. Instead of investigating these bikers, the officers checked out Plaintiff's motorcycle.

When Plaintiff saw the officers out in the alley, he rushed outside because his motorcycle was parked illegally, and he did not want to get a ticket. Plaintiff quickly walked up to his motorcycle and got on it. As Plaintiff got on his motorcycle, which was not running, the officers said, "Just stop . . .. Just stop."[1] Plaintiff then moved the motorcycle forward and backward to put the kick stand down. Before Plaintiff had time to get off the bike, the officers rammed their motorcycles into Plaintiff's, causing Plaintiff's motorcycling to fall on top of him, pinning him so he could not move. Plaintiff said, "Dude what the fuck are you doing?"

While saying "Get off the fucking bike," the officers pulled Plaintiff away from the entangled motorcycles, threw him to the ground, and jumped on top of him. Plaintiff answered, "I am not fucking doing anything." An officer responded, "We just told you to get off the bike." But in fact, the officers never told Plaintiff to get off his motorcycle.

The officers forcibly restrained Plaintiff by punching him and twisting his neck/head and feet while on top of him. One officer placed his knee into Plaintiff's back and neck, injuring him. The officers held Plaintiff down in such a fashion that he could not breathe. Plaintiff said, "Guys I have fucking cancer I can't breathe." Five seconds later, he repeated, "I can't breathe." An officer responded, "You're good." Plaintiff again asked the officers to take his helmet off and

---

[1] The quotations are taken from a GoPro video camera Plaintiff was wearing during the incident. The video is not attached to the Complaint, but the Complaint contains what Plaintiff asserts is a transcript of the incident.

remove the knee from his back because he had cancer. The officers responded, "We're good we just need a wagon." Plaintiff pleaded, "No, I swear to God bro, I can't breathe, I can't breathe."

At some point, the officers forcibly ripped off Plaintiff's motorcycle helmet, further injuring him. To get Plaintiff into the position the officers wanted him in, the officers used hard open hand and closed fist techniques, even though Plaintiff was not resisting in any form or fashion.

While being held by the officers, Plaintiff complained about his treatment. After Plaintiff explained he was just trying to put his kick stand down so his motorcycle would not fall over, the officers replied that they did what they did because "we told you to get off the bike."

A short time later, one of the officers told Plaintiff he was under arrest for "failure to obey a lawful order and attempting to allude." Plaintiff responded, "What are you talking about? You guys just fucking told me to stop and I tried to put my kick stand down and you hit me with your bike, . . . how am I going to stop?" The officer responded, "I told you to stop and you didn't stop."

As the officers were taking Plaintiff into custody, they never asked him about any of the alleged actions or crimes they were initially investigating.

After additional police arrived, Plaintiff asked a supervising officer why he was being arrested and for what charges. The supervising officer said he would let him know after they got down to the station. The police placed Plaintiff on a 24-hour hold without telling him what underlying crime he had allegedly committed or what they were investigating.

After the police released Plaintiff from custody, they ticketed him for: (1) failure to comply with police, (2) having no insurance, (3) operating a motor vehicle without a proper license, (4) improper registration, (5) improper display of license plates, and (6) obstruction of justice – resisting arrest. Once Plaintiff produced a video of this incident to the City Prosecutor, the moving

violation tickets were dismissed or amended, and the municipal court dismissed the failure to comply and obstruction of justice citations.

Defendants' acts and omissions caused $4,068.00 in damages to Plaintiff's motorcycle. They also caused Plaintiff to suffer personal injuries to his right leg and foot, as well as lacerations to his head, knee, eye, and shoulder blade, and pain in Plaintiff's left hand, neck, feet, and hip. As a result of this incident, Plaintiff has also suffered mental and emotional distress and anguish, as well as nightmares and anxiety.

On April 28, 2024, Plaintiff filed this lawsuit. Read expansively, the Complaint names as defendants the Kansas City Board of Police Commissioners ("the Board"), its individual members in both their individual and official capacities ("the Commissioners"), and KCPD Officers Edward Williams and Aaron Smith ("the officers") in their official and individual capacities on all claims. The claims are summarized below.

| Count | Claim | Defendant(s) |
|---|---|---|
| I | § 1983 claim – Unlawful stop and seizure | The officers |
| II | § 1983 claim – Unlawful stop and seizure | The Board and the Commissioners |
| III | § 1983 claim – excessive force | The officers |
| IV | § 1983 claim – excessive force | The Board and the Commissioners |
| V | § 1983 claim – Monell (KCPD Policy) | The Board and the Commissioners |
| VI | § 1983 claim – Monell (Official Policy and Private Vehicles) | The Board and the Commissioners |

| VII | § 1983 claim – Monell (Policy or Custom) | The Board and the Commissioners |
| --- | --- | --- |
| VIII | State-law claim – Battery | The officers |
| IX | State-law claim – Intentional Infliction of Emotional Distress ("IIED") | The Board, the Commissioners, and the officers |
| X | State-law claim – negligence | The Board, the Commissioners, and the officers |
| XI | State-law claim – negligent training/supervision | The Board and the Commissioners |

**Discussion**

Defendants move to dismiss most, but not all, of these claims. Defendants argue the federal claims brought against the Commissioners in their individual capacity should be dismissed because they are entitled to qualified immunity, and the federal claims brought against them in their official capacity should be dismissed because Plaintiff has failed to state a claim under a failure to train/supervise (or *Monell*) theory of liability. With respect to the state law claims, the Commissioners argue sovereign immunity bars such claims against them, except for Count X.

Turning to the police officers, Defendants argue the claims brought against them in their official capacity are the same as naming the Board and so these claims should be dismissed as redundant. They also argue the officers are entitled to official immunity on Count X.

Plaintiff responds that the Complaint sufficiently pleads all claims. However, this response consists almost exclusively of legal conclusions and lengthy excerpts from the Complaint.

The Court rules as follows.

As a threshold matter, all claims brought against the Board and the officers and the Commissioners in their official capacity are claims against the state of Missouri. *See, e.g., Citicasters, Inc. v. McCaskill*, 883 F. Supp. 1282, 1291 (W.D. Mo. 1995) (overruled on other grounds). Thus, unless the state has waived sovereign immunity, these claims are barred. *Id*. As discussed below in more detail, sovereign immunity has only been waived with respect to Count X, thus all claims brought against the Board and the officers and the Commissioners in their official capacity are dismissed.

### I. The Commissioners are entitled to qualified immunity on all federal claims asserted against them in their individual capacity (Counts II, IV – VII).

Defendant Commissioners argue they are entitled to qualified immunity on the federal claims asserted against them in their individual capacity because their liability is limited to situations where (1) they had actual notice of a pattern of unconstitutional acts committed by the officers, or (2) where they personally participated in the unconstitutional acts, neither of which the Complaint alleges occurred here. In response, Plaintiff contends the Complaint sufficiently pleads the inapplicability of qualified immunity to these Defendants. Unfortunately, Plaintiff does not respond to the specifics of the Commissioners' arguments.

Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 951 (8th Cir. 2024). Because qualified immunity is an affirmative defense, it can be upheld at the motion to dismiss stage only when the immunity is established on the face of the complaint. *Id*. In this case, the Complaint does not allege the Commissioners personally participated in the deprivation of Plaintiff's rights, so the Complaint must allege each Commissioner "(1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or

authorized those acts." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right." *Id*. "Allegations of generalized notice are insufficient." *Id*.

The Complaint makes conclusory allegations that the policies of the Board of Commissioners: (1) allowed officers to detain and take into custody non-violent, cooperative, non-fleeing persons with no probable cause; (2) allowed officers to immediately threaten non-violent persons with the use of force, even lethal force; (3) allowed officers to continue to use excessive physical force including ramming their police vehicles into persons and their vehicles; and (4) failed to adequately train, supervise, and educate officers in the use of proper physical tactics and the use of de-escalation policies when first dealing with a potential suspect. These are exactly the kinds of indiscriminate, vague assertions about general notice which are insufficient to survive a motion to dismiss. Illustrative of how indiscriminate and conclusory these allegations are, the Court notes that three of the Commissioners Plaintiff is suing were not even commissioners when this event occurred.

The Court holds the Commissioners are entitled to qualified immunity on the claims asserted against them in their individual capacities in Counts II, IV, V, VI, and VII.

## II. The Commissioners are entitled to official immunity on the state law claims asserted against them in their individual capacities (Counts IX – XI).

With respect to the state law claims in Counts IX (intentional infliction of emotional distress), X (negligence), XI (negligent training/supervision), the Commissioners argue that Missouri's official immunity doctrine bars these claims against them in their individual capacities.

Official immunity protects public officials sued in their individual capacity from liability for torts committed during the course of their official duties for the performance of discretionary

acts. *See State ex rel. Morales v. Alessi,* 679 S.W.3d 467, 471 (Mo. 2023) (holding "[o]fficial immunity protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts."); *Hagedorn v. Adams*, 854 S.W.2d 470, 476 (Mo. App. 1993) (Fenner J.) (holding official immunity makes a governmental officer "immune from liability for torts arising out of a discretionary act"). A relevant exception to this doctrine is when a public official acts in bad faith or with malice. *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 496 (Mo. 2024). "[B]ad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Id*. Allegations of gross negligence or recklessness are insufficient to overcome official immunity. *Id*. at 497–498. Finally, "[a] plaintiff must plead *facts* establishing an exception to official immunity." *Alessi*, 679 S.W.3d at 471 (emphasis added).

In this case, Counts X and XI fail to allege the Commissioners acted with the requisite bad faith or malice: Count X merely alleges Defendants were "negligent," and Count XI similarly alleges "negligent acts and/or omissions." Compl. ¶¶ 124, 128, ECF No. 1. Granted, two paragraphs in Count IX contain the magic words: Paragraph 117 states "Defendants' actions . . . were done knowingly intentionally . . . and they were acting in bad faith and with malice" and paragraph 118 alleges "Defendants' actions . . . were done to retaliate, hurt, demean, humiliate, punish, and cause anxiety and fear . . . [and] intentionally done by Defendants' to cause Plaintiff severe emotional distress." Compl. ¶¶ 117, 118. But nowhere in the Complaint does it identify any actual, specific act the Commissioners allegedly did to intentionally cause Plaintiff emotional distress.[2] Thus, Count IX fails to "plead facts establishing an exception to official immunity."

---

[2] Tellingly, while Plaintiff's response quotes from the Complaint at length, it still fails to identify a single act any Commissioner allegedly did in connection with Count IX. *See* Suggestions in Opp'n. at 19–26, ECF No. 14.

### III. Counts II and IV fail to plausibly allege the Board of Police Commissioners failed to train or supervise the officers.

The parties agree that to state a claim for supervisor liability for a failure to train or supervise against the Board of Police Commissioners, Plaintiff must plausibly plead that the Board: (1) had *notice* of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifference to or tacitly authorized those acts; (3) failed to take sufficient remedial action; and (4) the failure to take remedial action was the proximate cause of Plaintiff's injury. *See Ball-bey v. Chandler*, 415 F.Supp.3d 884, 900 (E.D. Mo. 2019) (emphasis added). The Board argues the Complaint has failed to identify a single instance of an alleged constitutional deprivation that occurred prior to April 30, 2021, that placed the Board on notice. It also argues the Complaint does not allege how the Board was indifferent to or tacitly authorized this act; how it failed to take sufficient remedial action; or how the failure to take remedial action in response to the prior episode(s) was the proximate cause of Plaintiff's injury.

In response, Plaintiff contends this argument "is belied by the language of the Complaint and the exhibits thereto and incorporated therein by reference as follow." Suggestions in Opp'n at 26. Plaintiff then indiscriminately reprints long sections of the Complaint verbatim—the reprints comprise fourteen pages of Plaintiff's brief—with more than half of it highlighted in yellow. *Id.* at 26–40. Plaintiff concludes, "These portions of the Complaint allege facts sufficient to satisfy all of the elements required by *Ball-bey v. Chandler*, 415 F.Supp.3d 884, 900 (E.D. Mo. 2019)." *Id.* at 40.

As a threshold matter, opposing a motion to dismiss by simply reprinting large chunks of the Complaint without providing additional analysis or explanation is beyond unhelpful; it is a waste of the Court's time. It is the attorney's role, not the Court's, to identify specific passages in a document which support a party's argument. "Judges are not like pigs, hunting for truffles buried

in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (8th Cir. 1991). Indeed, Plaintiff's response here is so indiscriminate that it arguably amounts to waiver. *See id*.

Re-quoting large portions of the Complaint here is particularly pointless because the Complaint is an anthology of poorly written conclusory statements that fail to identify a single specific episode of allegedly unconstitutional conduct. For example, the Complaint (as reprinted in Plaintiff's brief) alleges the Commissioners

> have been on notice or should have been on notice of Defendants Smith and Williams Reputation as well as other KCPD officer reputations and customs and practices regarding improperly stopping, arresting and detaining a suspect as well as the improper and excessive use [sic] force upon the general public when effectuating the same.

Suggestions in Opp'n at 34 (reprinting Compl. ¶ 57). There is nothing specific in these allegations. And while the Complaint purportedly includes instances of the Board's "continuing, widespread, persistent pattern of unconstitutional misconduct," these allegations are also impermissibly vague. The Complaint cites:

> a. allowing officers of The Kansas City Missouri Police Department to stop, detain and take into custody non-violent, cooperative, non-fleeing suspects by using excessive force by threatening force including but not limited to the physical act of force and threat [sic] in conducting a Terry Stop, detaining a suspect and placing someone under arrest;
>
> b. allowing officers of the Kansas City Missouri Police Department to immediately threaten non-violent suspects and use potentially lethal/deadly force and actually use that degree of force against the same custody [sic] non-violent, cooperative, non-fleeing suspects;
>
> c. allowing officers of the Kansas City Missouri Police Department to continue to use excessive physical force including but not limited to use of aggressive threats and excessive physical tactics against individuals in detaining a suspect when that person does not have a warrant out for his arrest, nor committed an arrestable offense, not

11

Case 4:24-cv-00306-DGK   Document 23   Filed 10/28/24   Page 11 of 18

> [sic] resisting or no longer resisting arrest or detainment, and, having not attempted, threatened any act of violence to endanger anyone;
>
> d. Failing to adequately train, supervise, and educate Kansas City Missouri Police Department employees/officers in the use of proper physical tactics and alternatives to the overly aggressive physical tactics that would constitute unreasonable and excessive force;
>
> e. Allowing officer [sic] to commence a Terry Stop by ramming their KCPD motorcycle into the motorcycle and person of the Plaintiff;
>
> f. Not giving commands to the suspect they want to stop detain or arrest so de-escalation tactics and can [sic] used to the benefit and safety of the officer and the suspect;
>
> g. Allowing officers to throw people to the ground, used [sic] closed hand techniques and strikes, with choke holds, feet locks and knees to the back and head with the weight of the officer on the suspect who had not refused a command, resisted, fled nor committed a crime in their presence nor was being arrest for a serious crime but instead small vehicle municipal code infractions.

*Id*. at 37 (reprinting Compl. ¶ 75). But none of these purported examples identifies a single specific prior unconstitutional act, nor do they explain how the Board was being deliberately indifferent to, or tacitly authorized, these prior acts. Nor do they allege how the Board failed to take sufficient remedial action (for example, by identifying the additional training it should have ordered KCPD officers to take), nor do they allege how this alleged failure to take remedial action proximately caused Plaintiff's injury.

Consequently, Counts II and IV fail to state a claim for failure to supervise or train.

### IV. The Complaint fails to plead sufficient facts for any *Monell* claims.

Next, the Board argues the §1983 claims brought pursuant to *Monell* (Counts V-VII) must be dismissed because the Complaint does not identify a specific unconstitutional policy or custom which was the moving force behind Plaintiff's constitutional deprivation. The Board notes that

while the Complaint identifies various KCPD policies the officers allegedly violated, these policies were put in place to *prevent* constitutional violations, and the Complaint fails to allege that these policies were themselves unconstitutional which is what the Complaint must do to plead *Monell* liability. The Board also points out the Complaint makes no allegations of *specific* incidents of misconduct other than the one involving officers Williams and Smith on April 30, 2021, which is insufficient.

Plaintiff responds that the Complaint identifies specific policies the officers violated. Plaintiff also contends the Complaint alleges the Board failed to train the officers in these policies and failed to enforce these policies, which resulted in Plaintiff's injuries. Plaintiff also contends he has pled that there is a "systemic and intentional failure" by everyone in the in the KCPD, "from the Board to the offices on the street," to fail to follow their own policies "which is the custom policy or practice alleged by the Plaintiff." Suggestions in Opp'n at 41.

The Court holds the Complaint fails to adequately plead a *Monell* claim because it fails to identify any specific unconstitutional policy or custom which was the moving force here. To the extent Plaintiff is arguing the Complaint pleads that the unconstitutional policy or custom is an unofficial policy to fail to follow or enforce official KCPD policies, this argument fails. While an unofficial custom resulting in a constitutional violation can be the basis for *Monell* liability, to survive a motion to dismiss a plaintiff alleging such a theory must plead specific facts showing

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

13

Case 4:24-cv-00306-DGK   Document 23   Filed 10/28/24   Page 13 of 18

*Malone v. Hinman*, 847 F.4th 949, 955 (8th Cir. 2017). While the Complaint makes some broad, vague, and conclusory allegations about the existence of some of these elements—such as the existence of a pattern of unconstitutional misconduct—the Complaint fails to allege any *specific* facts supporting these elements. Hence, Counts V-VII must be dismissed.[3]

V. **The officers are entitled to official immunity on Count X.**

Officers Williams and Smith move to dismiss the negligence claim (Count X) based on official immunity, arguing how they operated their motorcycles in apprehending Plaintiff was an exercise of discretion and not a ministerial decision.

Plaintiff responds that this argument fails for two reasons. First, because the Complaint "alleges specific facts which establishes bad faith and malice, which is an exception to official immunity." Suggestions in Opp'n at 45. Second, because "Count X alleges auto negligence in a non-emergent situation . . . [and police officers] are not entitled to official immunity in a non-emergent situation, particularly in a non-emergent situation where they acted maliciously and in bad faith, as they did in this case." *Id*. at 52. Plaintiff cites *Brown v. Tate*, 888 S.W.2d 413 (Mo. App. 1994) in support.

Both arguments are unavailing. Assuming the Complaint alleges specific facts establishing bad faith and malice, the first argument nonetheless fails because it ignores an on-point Missouri Supreme Court decision from 2024, *a decision Defendants cited on page eight of their opening brief*. In that case, the Missouri Supreme Court clarified that "bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *State ex rel. Love*, 689 S.W.3d at 496.[4] Here, Count X does not allege the officers intended to hurt Plaintiff; it alleges they "failed

---

[3] Given the Complaint and the arguments in Plaintiff's Suggestions in Opposition to the motion to dismiss, the Court has concerns about Plaintiff's counsels' understanding of *Monell*. It encourages Plaintiff's counsel to review recent Eighth Circuit caselaw applying *Monell* before attempting to re-plead any *Monell* claims.

[4] Of course, Plaintiff's cites a Missouri Supreme Court decision from 2008 which states, "Even a discretionary act, however, will not be protected by official immunity if the conduct is willfully wrong or done with malice or

to use the highest degree of care in operating their vehicles and were negligent in that that they drove their motorcycles into the Plaintiff's Motorcycle." Compl. ¶ 124. This is ordinary negligence, not an intentional act. *Jones v. Marshall*, 750 S.W.2d 727, 728 (Mo. App. 1998) ("The theories of negligence and intentional tort are contradictory and mutually exclusive."). Hence, the officers are entitled to official immunity on Count X.

As for the argument that police officers are not entitled to official immunity in a non-emergent situation, as the Missouri Supreme Court observed almost two years ago, this statement "misstates the law." *State ex rel. Barron v. Beger*, 655 S.W.3d 356, 361 (Mo. 2022). In *Barron*, a plaintiff advanced the same argument Plaintiff is making now. In response, the Missouri Supreme Court wrote the following:

> Osborn argues Trooper Barron is not entitled to official immunity because she was not responding to an "emergency," and, therefore, was not acting with "discretion." *Osborn misstates the law.* Whether Trooper Barron was responding to an emergency is not an element of the affirmative defense of official immunity. While Missouri case law has defined emergencies as non-ministerial, it is not an element Trooper Barron must prove. *See, e.g.*, *Southers v. City of Farmington*, 263 S.W.3d 603, 618-19 (Mo. banc 2008); *Davis v. Lambert-St. Louis Intern. Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006).

*Id* (emphasis added). Hence, whether this was an emergent situation or not, the officers are entitled to official immunity on Count X.

Finally, because it appears Plaintiffs' counsel have twice cited caselaw to the Court that they knew, or should have known, was invalid for the proposition cited to this Court, the Court will issue an order directing them to show cause why they should not be sanctioned.

---

corruption." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). But that case is from 2008, and Defendants cited an on-point Missouri Supreme Court case from 2024. An attorney is ethically obligated to at least acknowledge the subsequent decision.

### VI. The state law claims brought against the Board are dismissed except for the negligence claim, Count X.

Finally, the Board argues sovereign immunity bars Plaintiff from bringing all state law tort claims against it except for Count X, the automobile negligence claim. The Board acknowledges the state has waived sovereign immunity on the negligence claim by passing a statute but argues Plaintiff's vague assertion that the Board either had insurance or a self-insurance policy is insufficient, and so all state law claims except Count X should be dismissed.

In response, Plaintiff notes the Complaint states, "The Doctrine of Sovereign Immunity does not afford protection because Defendants and or the Kansas City, Missouri Board of Police Commissioners have procured applicable Liability Insurance or established a self-insurance plan, that insured actions by their agents and Officers . . ." Compl. ¶ 44. Plaintiff's brief also asserts that the Board does, in fact, have a self-insurance plan. Included in Plaintiff's response is a single page from a multi-page memo produced in discovery in another case which discusses a "Liability Self-Retention General Fund Subsidiary Account." The included page from this memo states this fund may be used to pay claims made by third parties for Board liability if such claims are not barred by sovereign immunity, and such payments shall be made only with proper authorization. On its face, this page suggests the Board may have a self-insurance plan.

In their reply, the Board notes that as a governmental entity it must operate through an operating budget which itemizes expenditures by organizing them into units, activities, functions, and character classes. It contends the self-retention general fund subsidiary account referred to in the memo is simply the budget line item used to account for payments made to satisfying judgments made against the Board. It also notes that in the subject line of the memo it states, "Liability Self-Retention General Fund Subsidiary Account Not Waiver of Sovereign Immunity,"

16
Case 4:24-cv-00306-DGK   Document 23   Filed 10/28/24   Page 16 of 18

which suggests the account is *not* a self-insurance plan under Missouri law, at least Missouri law does not treat it as such.

The Court holds Plaintiff has not sufficiently pled an exception to sovereign immunity. As another federal district court has observed,

> Statutory provisions waiving sovereign immunity are strictly construed. Under Mo. Rev. Stat. § 537.610.1, a plaintiff must prove the existence of an insurance policy *and* that the terms of the policy cover the plaintiff's claims. Because the liability of a public entity for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is within an exception to sovereign immunity.

*Berry v. Missouri Dep't of Corrections*, No. 2:24-cv-25-CDP, 2024 WL 3874485, at *2 (E.D. Mo. Aug. 20, 2024) (internal quotations and citations omitted). The Complaint's bare, conclusory assertion that the Board either has insurance or a self-insurance policy is inadequate, and Plaintiff cannot resuscitate these claims after a motion to dismiss has been filed by attaching a document to his response in opposition. Even if this document proved what Plaintiff purports it proves—which seems unlikely—Plaintiff has not established this document is part of the public record or is necessarily embraced by the pleadings, so the Court cannot consider it at the motion to dismiss stage. *See Miller*, 688 F.3d at 931.

Accordingly, all state law claims against the Board are dismissed, except for Count X.

## Conclusion

For the reasons discussed above, the motion to dismiss is GRANTED. The following claims survive the motion to dismiss: Counts I, III, and VIII–X brought against the officers in their individual capacity only. All other claims are DISMISSED WITHOUT PREJUDICE.

The Court will issue a show cause order to Plaintiff's counsel in a separate order.

**IT IS SO ORDERED.**

Date:  October 28, 2024          /s/ Greg Kays
                                 GREG KAYS, JUDGE
                                 UNITED STATES DISTRICT COURT